IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER J. JONES,                   2:17-cv-01031-BR

        Plaintiff,                      OPINION AND ORDER

v.

JERI TAYLOR, et al.,

        Defendants.


**CHRISTOPHER J. JONES**
#15279830
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR 97914-8335

        Plaintiff, *Pro Se*

**ELLEN F. ROSENBLUM**
Attorney General
**SHANNON M. VINCENT**
Senior Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 947-4700

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff's Motion (#39) to Produce Extra Legal Documentation to Defendant's Summary Judgment Claim and Defendants' Motion (#30) for Summary Judgment. The Court concludes the record is sufficiently developed such that oral argument would not be helpful to the resolution of these Motions. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and **GRANTS** Defendants' Motion.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and the parties' materials related to Defendants' Motion for Summary Judgment and are viewed in the light most favorable to Plaintiff.

At all relevant times Plaintiff Christopher J. Jones was an inmate at Snake River Correctional Institution (SRCI).

On February 7, 2017, Defendant Lieutenant (Lt.) Rodney Carey submitted an Oregon Department of Corrections (ODOC) Request for Administrative Housing in which he requested Plaintiff to be placed in involuntary administrative segregation for 30 days through March 9, 2017, pending investigation into allegations that Plaintiff was sexually assaulting and sexually coercing a vulnerable inmate. Captain J. Walker approved the 30-day placement.

After Lt. Carey completed his investigation, he filed a

Misconduct Report against Plaintiff on March 9, 2017.  Lt. Carey
reported:

> On 03/09/2017 I was assigned as the Assignment
> Lieutenant on second shift.  At approximately
> 4:00pm I finished my investigation into Inmate
> Jones, Christopher #15279830 sexually assaulting
> another inmate on F4 Housing Unit.  Multiple CI
> [Confidential Informant] reports as well as Oregon
> State Police documentation support the above rule
> violations.  CI's [sic] stated Inmate Jones was
> engaged in forceful sexual situations with [Victim
> Inmate][1] between the dates of 8/25/2016 and
> 1/27/2017.  One CI reported there were other
> inmates that Inmate Jones had forced into sexual
> situations other than [Victim Inmate].  My
> investigation concluded that Inmate Jones used
> extortion, intimidation and physical force to gain
> canteen items and sex from [Victim Inmate].  These
> situations took place in the unit shower, laundry
> room as well as the bunk area.

Decl. of Jason Walker, Ex. 3 at 1.  Lt. Carey charged Plaintiff

with violating four ODOC Rules:  (1) Rule 2.20, Sexual Assault;

(2) Rule 2.15, Extortion I; (3) Rule 2.10, Disrespect I; and

(4) Rule 2.05, Inmate Assault I.  An officer-in-charge reviewed

Lt. Carey's misconduct report and found "the rule violations

. . . are of such a serious nature that the good order and

security of the facility" required Plaintiff to remain in

segregation on the ground that "[e]xperience has shown that

inmates who engage in assaultive conduct are a present and

---

[1] Although Plaintiff had actual notice of the identity of
the inmate he allegedly assaulted and the parties include the
victim's name in full in their papers, the Court redacts the
victim's name in this Opinion and Order to minimize further
intrusion on the victim's privacy.

continuing threat to themselves, other inmates and staff members. Therefore becoming a threat to the safety and security of the institution." Walker Decl., Ex. 3 at 1.

On March 14, 2017, Defendant Hearings Officer Heather Nevil held a disciplinary hearing relating to Plaintiff's alleged rule violations. At the hearing Plaintiff acknowledged he had received copies of his Notice of Rights, Notice of Hearing, and Rules of Prohibited Conduct and that he understood those documents, his rights in the hearing, and the rule violations against him. Decl. of Heather Nevil, Ex. 4 at 1. Plaintiff denied he violated ODOC rules. Officer Nevil read Lt. Carey's Misconduct Report into the record and advised Plaintiff that she had "the Confidential Informant Packet[, which included] all of the verbatim statements that were provided in confidence to Lt. Carey during his investigation." *Id.* at 2. Officer Nevil further advised Plaintiff that due to "the consistency of the information that's been provided in those confidential informants [*sic*] statements [Lt. Carey] . . . has deemed that these informants are credible and that their verbatim statements as well as their names should be withheld in order to protect the safety and security of the facility." *Id.* Plaintiff asked Officer Nevil to read the CI statements at the hearing. Officer Nevil declined and noted the salient information from the statements was contained in the Misconduct Report that she had

read into the record, she deemed the statements to be credible, and she had determined the verbatim statements and identities of the CIs should not be revealed due to safety concerns. Plaintiff provided a statement in which he denied the rule violations. Ultimately Officer Nevil dismissed the Rule 2.05 (Inmate Assault I) violation, substituted a violation of Rule 2.16 (Extortion II) for Rule 2.15 (Extortion I), and found Plaintiff guilty of violating Rule 2.20 (Sexual Assault) and Rule 2.10 (Disrespect I). Officer Nevil recommended sanctions of 120 days in disciplinary segregation with credit for the time Plaintiff had already served in segregation, a 28-day loss of privileges, and a $200 fine that was suspended "pending no [additional] major rule violations."[2]

Plaintiff sought administrative review of Officer Nevil's decision with the Oregon Inspector General's Office pursuant to ODOC rules.

On April 11, 2017, Assistant Inspector General Melissa Nofziger advised Plaintiff that the Inspector General's Office had reviewed Plaintiff's disciplinary hearing and

> the review indicates there was substantial
> compliance with the rule, the finding was based
> upon a preponderance of the evidence and the
> sanction imposed was in accordance with the

---

[2] Plaintiff did not commit any further major rule violations during the relevant period, and, therefore, he did not have to pay the fine.

> provisions set forth in the rule.  Refer to OAR
> 291-105-0085(3)(4).

Nevil Decl., Ex. 6 at 1.

On June 30, 2017, Plaintiff filed a *pro se* Complaint in this Court pursuant to 42 U.S.C. § 1983 against Lt. Carey, Officer Nevil, and SRCI Superintendant Jeri Taylor alleging (1) Lt. Carey violated Plaintiff's Fourteenth Amendment Right to procedural due process when he kept Plaintiff in administrative segregation from February 7, 2017, through March 9, 2017, and continued his administrative segregation from March 9, 2017, through March 14, 2017; (2) administrative segregation violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment because the cells do not have access to direct sunlight and Plaintiff was unable to purchase items from the canteen, including unidentified "religious items," during that time; (3) Officer Nevil violated Plaintiff's right to procedural due process when she interrupted him during the hearing, refused to read the CI statements into the record, and found Plaintiff guilty of the rule violations without sufficient evidence; and (4) Superintendent Taylor violated Plaintiff's right to due process when she "approved the sanction rather than dismiss it." Plaintiff seeks damages, injunctive relief, and declaratory relief.

On October 25, 2017, Defendants filed an Answer and Affirmative Defenses to Plaintiff's Complaint in which they

asserted affirmative defenses of qualified immunity, Plaintiff's failure to state a claim, and Plaintiff's failure to exhaust his administrative remedies.

On June 15, 2018, Defendants filed their Motion seeking summary judgment as to all of Plaintiff's claims on the grounds that (1) Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment claims before filing this action, (2) Defendants did not violate Plaintiff's right to due process, and (3) Defendants are entitled to qualified immunity.

On June 18, 2018, the Court issued a Summary Judgment Advice Notice to Plaintiff advising him that if he did not submit evidence in opposition to Defendants' Motion, summary judgment would be entered against him if appropriate.

On August 9, 2018, Plaintiff filed a Motion to Produce Extra Legal Documentation to Defendant's Summary Judgment Claim.

The Court took the parties' Motions under advisement on August 13, 2018.

## PLAINTIFF'S MOTION (#39) TO PRODUCE EXTRA LEGAL DOCUMENTATION TO DEFENDANT'S SUMMARY JUDGMENT CLAIM

In his Motion Plaintiff seeks to include additional evidence in his Declaration in opposition to Defendants' Motion for Summary Judgment. Plaintiff notes he was not able to include the information before he filed his Motion because he did not receive the information from the Oregon State Police until after the

7 – OPINION AND ORDER

deadline for his Response to Defendants' Motion had passed. Defendants do not object to Plaintiff's Motion, and they address the evidence Plaintiff submits in their Response to Plaintiff's Motion.

Because Plaintiff was unable to produce the evidence at issue before his Response deadline through no fault of his own and in light of the fact that Defendants do not object, the Court **GRANTS** Plaintiff's Motion and will consider the recent evidence he offers in opposition to Defendants' Motion for Summary Judgment along with the rest of the record in resolving Defendants' Motion.

## DEFENDANTS' MOTION (#30) FOR SUMMARY JUDGMENT

As noted, Defendants move for summary judgment as to all of Plaintiff's claims on the grounds that (1) Plaintiff did not exhaust his Eighth Amendment claims before filing this action, (2) Defendants did not violate Plaintiff's right to due process, and (3) Defendants are entitled to qualified immunity.

## I. Standards.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a

dispute as to a material fact. *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.,* 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.,* 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.

1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## II. Failure to Exhaust Administrative Remedies.

Defendants assert Plaintiff did not exhaust his administrative remedies as to his claim that administrative segregation violated his Eighth Amendment right to be free from cruel and unusual punishment.

### A. Prison Litigation Reform Act (PLRA) Exhaustion Requirement.

As noted, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 creates a private right of action against persons who, acting under color of state law, violate federal

constitutional or statutory rights. *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9ᵗʰ Cir. 2001).

The PLRA provides "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust . . . administrative remedies . . . before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quotation omitted). *See also Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1825 (2001)(same).

The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has made clear that courts "may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 136 S. Ct. at 1856. Moreover, prisoners are obligated to navigate the prison's administrative-review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth*, 532 U.S. at 739-41. Accordingly, the Ninth Circuit has held "plaintiffs must pursue a remedy through a prison grievance process as long as

*some* action can be ordered in response to the complaint." *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)(emphasis in original). Even if the relief the prisoner receives is nothing more than "corrective action taken in response to an inmate's grievance [that] . . . improve[s] prison administration and satisf[ies] the inmate," it is sufficient relief for an inmate to continue with the administrative process. *Id.* at 936 (quoting *Porter*, 534 U.S. at 525).

An inmate's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense. *Wyatt*, 280 F.3d at 1245. "[D]efendants have the burden of raising and proving the absence of exhaustion." *Id.* at 1120.

> Relevant evidence in so demonstrating would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case.

*Brown*, 422 F.3d at 937. As noted, if the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt*, 315 F.3d at 1119-20.

## B.    ODOC Grievance Procedure.

Pursuant to the administrative rules of ODOC that govern inmate grievances, inmates at ODOC facilities are required

12 - OPINION AND ORDER

to communicate with "line staff" verbally or in writing to resolve a dispute before filing a grievance. If communication with line staff does not resolve an inmate's issue, the inmate may then file a grievance form within 30 days of the incident or conflict. Inmates must attach copies of their previous communications with line staff to their grievance forms to demonstrate that they attempted to resolve the conflict informally before filing their grievance. If an inmate is not satisfied with the response to his or her grievance, the inmate may file an appeal to the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within 14 days from the time the response was sent to the inmate. The grievance coordinator then assigns the grievance a number and records it in the grievance log.

An inmate may appeal the functional unit manager's decision by submitting to the assistant director an appeal form, the original grievance, attachments, and staff responses. The grievance coordinator then date-stamps and logs the appeal. The decision of the assistant director is final and is not subject to further review.

ODOC informs inmates of the grievance procedure at their mandatory Admission and Orientation class held when inmates first arrive at a facility. In addition, information about the procedure is contained in the inmate handbook. Inmates may

obtain grievance forms and instructions from any housing-unit officer.

**C.    Plaintiff failed to exhaust the administrative remedies for his Eighth Amendment claims.**

As noted, Plaintiff alleges in his Complaint that administrative segregation violated his Eighth Amendment right to be free from cruel and unusual punishment because the cells do not have access to direct sunlight, Plaintiff was unable to purchase items from the canteen, and Plaintiff was unable to have and/or to purchase unidentified "religious items." Plaintiff states in his Declaration that "towards the end of March 2017 I had sent a kite to the property officer asking for some of my religious items out of my property," but his request was denied. Decl. of Christopher J. Jones at ¶ 29-30. Plaintiff states in his Brief in Opposition to Defendants' Motion that "[b]etween February 7th, 2017, and May 17, 2017, I kept asking D.S.U. staff about being able to get my religious items out of my property," but his requests were denied. Notably, however, Plaintiff does not allege he filed a grievance or otherwise pursued the administrative process.

Although the record reflects Plaintiff submitted four property-related grievances during his time in administrative segregation, the record also shows that in each of the grievances Plaintiff only requested the return of various address and telephone books seized from Plaintiff's cell. Decl. of Nina

14 - OPINION AND ORDER

Sobotta, Exs. 4-7. The record does not contain any grievances by Plaintiff related to access to direct sunlight, the purchase of items from the canteen, or the purchase or possession of religious items.

Accordingly, on this record, the Court concludes there are not any disputed issues of material fact and that Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim for failure to exhaust administrative remedies. The Court, therefore, grants Defendants' Motion as to that claim and dismisses it without prejudice.

## III. Plaintiff's Due-Process Claims.

As noted, Plaintiff alleges (1) Defendants violated his Fourteenth Amendment Right to procedural due process when they kept him in administrative segregation from February 7, 2017, through March 9, 2017, and continued his administrative segregation from March 9, 2017, through March 14, 2017; (2) Officer Nevil violated Plaintiff's right to procedural due process when she interrupted him during the hearing, refused to read the CI statements into the record, and found Plaintiff guilty of rule violations without sufficient evidence; and (3) Superintendent Taylor violated Plaintiff's right to due process when she "approved the sanction rather than dismiss it."

### A. Due Process.

The Supreme Court has made clear that the Due Process

Clause of the United States Constitution "encompasses . . . a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Accordingly, an inmate may bring an action for a violation of procedural due process. "In procedural due process claims, [however,] the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (quotation omitted)(emphasis in original). Thus,

> [t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was consti-tutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation.

*Id.* at 126.

### B. Plaintiff's Assignment to Administrative Segregation from February 7, 2017, through March 9, 2017.

Plaintiff alleges his assignment to administrative segregation from February 7 through March 9, 2017, violated procedural due process because it exceeded 30 days and he did not have a hearing during that period.

Oregon Administrative Rule 291-046-0014 provides: "An inmate may be . . . involuntarily assigned to administrative housing for a period not to exceed 30 days without a hearing."

16 - OPINION AND ORDER

The Court, however, takes judicial notice of the fact that the period from February 7, 2017, through March 9, 2017, is exactly 30 days. Thus, Plaintiff's assignment to administrative segregation for the 30-day period from February 7, 2017, through March 9, 2017, did not trigger the right to a hearing and was in accordance with ODOC regulations. Accordingly, Plaintiff's due-process claim as to his assignment to administrative segregation for that period fails as a matter of law.

### C. Plaintiff's Assignment to Administrative Segregation from March 9, 2017, through March 14, 2017.

Plaintiff also alleges his continued assignment to administrative segregation after the expiration of 30 days (on March 9, 2017) through the date of his hearing on March 14, 2017, violated his procedural due-process rights. Defendants assert Plaintiff was held in administrative segregation from March 9 through March 14, 2017, pursuant to Oregon Administrative Rule 291-105-0021, which provides in relevant part:

> (3) Temporary Placement in Disciplinary Segregation Status: An inmate charged with committing a rule violation may be placed in temporary disciplinary segregation status pending resolution of the charge. This action will be taken when the functional unit manager or the officer in-charge determines that the alleged rule violation charged is of such seriousness that the good order and security of the facility requires immediate removal of the inmate from the general population, or it is determined the inmate is a threat to the community or is likely to escape or abscond.

> (a) If temporary disciplinary segregation
> status is ordered, the officer in charge must
> complete the portion of the Department of
> Corrections misconduct report specifying the
> reason(s) why immediate temporary
> disciplinary segregation of the inmate was
> deemed necessary.
>
> (b) A completed copy of the Department of
> Corrections misconduct report will be
> forwarded to the functional unit manager or
> designee who will review the inmate's
> prehearing detention status within 72 hours
> of the inmate's placement in temporary
> disciplinary segregation status. If
> approved, the functional unit manager or
> designee will initial the report.

The record reflects on March 9, 2017, Lt. Carey completed an ODOC misconduct report and specified the reasons why Plaintiff's continued temporary disciplinary segregation was necessary. Specifically, Lt. Carey noted he had reviewed "[m]ultiple CI reports" in which CIs "stated Inmate Jones was engaged in forceful sexual situations with [Victim Inmate] . . . . One CI reported there were other inmates that Inmate Jones had forced into sexual situations other than [Victim Inmate]." Walker Decl., Ex. 3 at 1. Lt. Carey stated his "investigation concluded that Inmate Jones used extortion, intimidation and physical force to gain canteen items and sex from [Victim Inmate]." *Id.* An officer-in-charge reviewed Lt. Carey's misconduct report and found "the rule violations . . . are of such a serious nature that the good order and security of the facility" required Plaintiff to remain in

segregation on the ground that "[e]xperience has shown that inmates who engage in assaultive conduct are a present and continuing threat to themselves, other inmates and staff members. Therefore becoming a threat to the safety and security of the institution." Walker Decl., Ex. 3 at 1.

The Court concludes Defendants have established they followed the pertinent administrative rules when they continued Plaintiff's placement in administrative segregation and that Plaintiff has not established the rule violations alleged against him in the misconduct report were not sufficiently serious to permit Defendants to place Plaintiff in administrative segregation from March 9, 2017, through the date of his hearing on March 14, 2017. The Court, therefore, concludes Plaintiff's due-process claim as to his assignment to administrative segregation for that period fails as a matter of law.

## D. **Officer Nevil.**

As noted, Plaintiff asserts Officer Nevil violated Plaintiff's right to due process when she interrupted him during the hearing, refused to read the CI statements into the record, did not provide Plaintiff with an independent investigation, and found Plaintiff guilty of rule violations without sufficient evidence.

### 1. **Procedural Due Process.**

As noted, Plaintiff's assertions regarding Officer

Nevil's conduct relate to Plaintiff's procedural due-process rights.

In *Wolff v. McDonnell* the Supreme Court set out the basic procedural due-process guarantees in the context of prison disciplinary hearings. 418 U.S. 539, 563-72 (1974). In *Walker v. Sumner* the Ninth Circuit summarized the *Wolff* requirements as follows:

> *Wolff* established five procedural requirements. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.*, 418 U.S. at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570. The Court specifically held that the Due Process Clause does not require that prisons allow inmates to cross-examine their accusers, *id.* at 567-68, nor does it give rise to a right to counsel in the proceedings, *id.* at 569-70.

14 F.3d 1415, 1420 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 482 (1995).

The Court has reviewed the transcript of the disciplinary hearing and concludes it reflects Officer Nevil provided Plaintiff with an adequate opportunity to defend himself from the allegations and to present evidence in his defense even though Officer Nevil occasionally interrupted Plaintiff. On this record, therefore, the Court concludes Plaintiff has not established the alleged interruptions by Officer Nevil violated Plaintiff's right to due process.

The Court notes Officer Nevil declined to read the CI statements into the record due to concerns about the safety of the informants. The Supreme Court and Ninth Circuit have made clear that "[d]ue process does not require . . . an informant's identity be revealed to an inmate." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987)(citing *Wolff*, 418 U.S. at 568-69). In any event, Officer Nevil gave Plaintiff a synopsis of the statements that the Court concludes was sufficient for Plaintiff to respond to the CI's allegations. On this record the Court concludes Officer Nevil did not violate procedural due process when she declined to read the CI's verbatim statements into the record.

Finally, the Court emphasizes pursuant to *Wolff*, procedural due process does not require an inmate to be provided

21 - OPINION AND ORDER

with an independent investigation. *See Picket v. Williams*, No.
09-cv-689-TC, 2011 WL 4913573, at *4 (D. Or. Aug. 23, 2011)
("[t]he minimum procedural due process protections required at
prison disciplinary hearing[s] set forth in *Wolff* do not include
the right to an investigation."). *See also Henderson v.
Schoville*, No. CV 00- 12616-MMM (JEM), 2010 WL 342596, at *8
(C.D. Cal. Jan. 28, 2010) (*Wolff* "does not require prison
officials to conduct an investigation in a certain manner or
pursuant to the request of an inmate." Citing *Arguijo v. Dennis*,
No. 07-CV-1908-BR, 2009 WL 393957, at *3 (D. Or. Feb. 2, 2009));
*Anthony v. County of Multnomah*, No. CV 04-229-MO, 2006 WL 278193,
at *3 (D. Or. Feb. 3, 2006)(an inmate is not entitled to
investigation by a third party or to an investigation conducted
in a particular manner under *Wolff*); *Whitford v. Boglino*, 63 F.3d
527, 532 (7th Cir. 1995)(inmates do not have any "federal due
process right to a prehearing investigation"); *Brown v. Frey*, 889
F.2d 159, 170-71 (8th Cir. 1989)(there is not a "clear
constitutional right to an 'adequate investigation'" in the
context of prison disciplinary proceedings). In any event,
Plaintiff did not request an independent investigation. On this
record, therefore, the Court concludes Officer Nevil did not
violate Plaintiff's procedural due-process rights when she did
not provide Plaintiff with an independent investigation.

22 - OPINION AND ORDER

## 2. Substantive Due Process.

Plaintiff's allegation that Officer Nevil found Plaintiff guilty of rule violations without sufficient evidence implicates Plaintiff's right to substantive due process.

In the context of prison disciplinary hearings, substantive due process requires only that there is "some evidence" to support a disciplinary decision. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). *See also Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "Under *Hill*, we do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" *Bruce*, 351 F.3d at 1287 (quoting *Hill*, 472 U.S. at 455-56). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Wolff*, 472 U.S. at 456.

Here Officer Nevil concluded Plaintiff violated Rules 2.16 (Extortion II), 2.20 (Sexual Assault), and 2.10 (Disrespect I). Officer Nevil based her decision on Lt. Carey's investigation and Misconduct Report as well as the CI statements. The Ninth Circuit held in *Zimmerlee*:

> [A] prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when (1) the

record contains some factual information from
which the committee can reasonably conclude that
the information was reliable, and (2) the record
contains a prison official's affirmative statement
that safety considerations prevent the disclosure
of the informant's name. Review of both the
reliability determination and the safety
determination should be deferential.

Reliability may be established by: (1) the oath
of the investigating officer appearing before
the committee as to the truth of his report
that contains confidential information,
(2) corroborating testimony, (3) a statement on
the record by the chairman of the committee that
he had firsthand knowledge of sources of
information and considered them reliable based on
the informant's past record, or (4) an *in camera*
review of the documentation from which credibility
was assessed.

831 F.2d at 186-87 (citation omitted). *See also Brown v.
Marshall*, 538 F. App'x 825, 826 (9th Cir. 2013)(same).

Defendants submitted the CI statements on which

Officer Nevil relied for this Court's *in camera* review. The

Court finds a reasonable hearings officer could conclude these

statements were credible based on their general factual

consistency with each other as to the events at issue,

Plaintiff's other behavior, and the CI's proximity to and

familiarity with Plaintiff and the victim inmate. Accordingly,

on this record the Court concludes Officer Nevil did not violate

Plaintiff's right to substantive due process because she based

her decision on sufficient evidence in the record to support her

determination.

In summary, the Court grants Defendants' Motion for Summary
Judgment as to Plaintiff's claims for violation of procedural and
substantive due process and dismisses those claims with
prejudice.

## IV. Defendant Jeri Taylor.

Finally, Plaintiff alleges then-Superintendent Jeri Taylor
violated Plaintiff's right to due process when she "approved the
sanction [entered by Officer Nevil] rather than dismiss it."
Compl. at 5.

To establish a claim under § 1983 against an individual
defendant, a plaintiff must plead facts sufficient to show
personal participation in the alleged constitutional deprivation
by each defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676
(2009)("Because vicarious liability is inapplicable to . . .
§ 1983 suits, a plaintiff must plead that each Government-
official defendant, through the official's own individual acts,
has violated the Constitution."). *See also Zellmer v.
Constantine*, 520 F. App'x 564, 565 (9th Cir. 2013)("The district
court properly dismissed defendant Constantine because Zellmer
failed to show that Constantine had any personal involvement in
the alleged violations."); *Arizmendi v. City of San Jose*,
No. 5:08-CV-05163 EJD, 2012 WL 5471152, at *4 (N.D. Cal. Nov. 9,
2012)("A plaintiff must establish "integral participation" of the
individual officer in the alleged constitutional violation.

Summary Judgment, therefore, is proper when there is no question of fact or dispute that specific individual defendants did not participate personally in an allegedly unconstitutional search." (citations omitted)).

Oregon Administrative Rule 291-105-0085(1) provides:

> Any order for rule violations on Level I or Level II of the major violation grid or, which recommends an extension of the inmate's parole release date or retraction of earned time, statutory good time or extra good time credits; or which recommends a deviation from the segregation sanction listed on the grid is subject to review by the Inspector General.

Plaintiff sought and received review of Officer Nevil's decision by the Oregon Inspector General. As noted, Assistant Inspector General Nofziger advised Plaintiff that the Inspector General's Office concluded "the review indicates there was substantial compliance with the rule, the finding was based upon a preponderance of the evidence and the sanction imposed was in accordance with the provisions set forth in the rule." Nevil Decl., Ex. 6 at 1. Defendant Taylor, however, was not involved in any part of the administrative appeal process pursuant to Rule 291-105-0085(1).

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim against Defendant Taylor and dismisses that claim with prejudice.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff's Motion (#39) to Produce Extra Legal Documentation to Defendant's Summary Judgment Claim, **GRANTS** Defendants' Motion (#30) for Summary Judgment, **DISMISSES without prejudice** Plaintiff's Eighth Amendment claim, and **DISMISSES with prejudice** the remainder of Plaintiff's claims.

IT IS SO ORDERED.

DATED this 18th day of September, 2018.

_anna J Brown_

ANNA J. BROWN
United States Senior District Judge